AETNA LIFE INS. CO. et al. v. INDUSTRIAL
COMMISSION OF UTAH

No. 4486.   Decided December 31, 1926.   (252 P. 567.)

*Bagley, Judd & Ray,* of Salt Lake City, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendant Industrial Commission.

*Creighton G. King* and *Louis E. Callis,* both of Salt Lake City, for defendant Heladakis. .

FRICK, J.

This is a proceeding in which this court is requested to review a decision of the Industrial Commission of Utah, hereinafter called commission. The defendant A. E. Heladakis, hereinafter styled applicant, made application to the commission for compensation for an injury which he alleged he sustained in the course of his employment in January, 1925, while employed by the Utah-Apex Mining Company, one of the plaintiffs in this proceeding. A hearing on the first application made by the applicant was duly had, and the commission awarded him compensation for a period commencing "January 19, 1925, to April 6, 1925," at the rate of $16 per week, amounting to the sum of $164.14 as compensation, "$70.60 as physician's services," and $93 for hospital fees, all of which was paid by the plaintiff Aetna

Life Insurance Company as insurance carrier of plaintiff Utah-Apex Mining Company, the employer. The applicant afterwards made application to the commission for additional compensation for the same injury. Several hearings were had on that application, after which the commission found "that the applicant was not disabled as a result of the injury sustained on January 19, 1925, on and after April 6, 1925." The commission accordingly denied applicant any further or additional compensation. The applicant applied for a rehearing pursuant to the statute, which was denied. He then made application to this court for the usual statutory writ of review, which was issued. Upon considering the application, however, this court found that the application made to this court was not made within the time required by our statute, and for that reason the proceeding was dismissed. See *Heladakis* v. *Ind. Comm.*, (Utah) 245 P. 334. Ordinarily, after an applicant has had the statutory hearings, and has been denied compensation, and the decision of the commission has been reviewed by this court, the matter ends. In this case, however, the applicant made further application to the commission for additional compensation, and on further independent investigation the commission became convinced that the applicant was temporarily totally disabled from following his vocation or from following any remunerative employment. The commission then again took up the question of applicant's injuries to determine, if possible what the status of his injuries was. On May 25, 1926, with that end in view, the commission addressed a letter to Dr. D. K. Allen, a specialist in bone diseases, and requested him to make a further examination into the status of applicant's injuries. Pursuant to that request Dr. Allen made further examination of applicant's injuries, and on May 26, 1926, reported as follows:

"General examination of the above-named applicant is negative, except the left knee. Just below the left patella there is some thickening of the tissues. He complains of pain when bending the knee or when walking. Going up or down stairs also gives pain. It is my opinion that this claimant has a prepatellar bursitis. This is a difficult

case in which to make positive diagnosis. Would recommend hospitalization and operation, if necessary."

Afterwards, and on June 6, 1926, the doctor made a further report as follows:

"The above-named claimant was placed in the L. D. S. Hospital June 2nd for observation, and, if possible, to make a definite diagnosis. He was discharged today. It is my opinion that this claimant has a prepatellar burisitis, and that it is the result of an injury received in January, 1925. Would recommend that he be operated as soon as possible."

The commission then took up the question of a further operation with the attorney for the insurance carrier. The attorney, however, refused to authorize anything further to be done, and insisted that, in view of the prior findings of the commission, the applicant had been fully compensated for his injuries. The commission then made arrangements with Dr. Allen and with the hospital to have a further operation performed on the applicant's knee. The operation was then performed by Dr. Allen, who, on June 30, 1926, reported:

"The above-named applicant (Heladakis) was operated upon June 22, 1926, at the L. D. S. Hospital. A five-inch incision was made over the left patella, and the prepatellar bursi was removed. The wall of the bursi was found to be thickened, and the inside of the bursial sac was filled with adhesions. The post patellar pad of fat was found to be enlarged to about three times its normal size. This was also removed. The microscopic examination showed subacute and chronic bursitis. It is my opinion that this condition would have gotten worse as time went on. He will have some permanent disability. He left the hospital June 30th, without permission, in a bad mental condition."

After the operation had been performed and after further investigation, the commission reassumed jurisdiction of the case, and, after a further hearing, of which all parties had notice, the commission made a further and complete statement of the history of the case and the various hearings

that had taken place, and found that "as a result of the injury sustained on January 19, 1925, Mr. Heladakis (applicant) was temporarily totally disabled up to the date of the hearing, namely, July 20th, 1926, and will in all probability be temporarily totally disabled for some few weeks, and that the permanent partial lost function to the left knee will * * * amount to * * * 15 per cent." The commission then entered the following order:

"Wherefore it is ordered that the Utah-Apex Mining Company or the Aetna Life Insurance Company pay to A. E. Heladakis compensation in a lump sum amounting to $1,072, representing compensation during the period beginning April 7, 1925, up to and including July 19, 1926, and thereafter to continue the payment of compensation in the sum of $16 per week until such time as the attending physician, Dr. D. K. Allen, pronounces the applicant, Mr. A. E. Heladakis, as surgically healed, at which time Mr. Heladakis is to appear before the commission for examination in order that the commission may determine the amount of compensation which he may be entitled to receive for any permanent partial lost function to applicant's left leg at the knee."

The commission also ordered that the employer or the insurance carrier pay certain hospital expenses, and that they or either of them pay Dr. Allen for his service in making the operation the sum of $150.

The mining company and the insurance carrier then instituted this proceeding to review the foregoing action or decision of the commission. It is insisted that the commission, in awarding further compensation, and in authorizing further expenses, and in requiring plaintiffs to pay the same, exceeded its power or jurisdiction. On the other hand, the commission contends that its action and final decision is authorized by Comp. Laws Utah, 1917, § 3144, which provides as follows:

"The powers and jurisdiction of the commission over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings or orders with respect thereto as in its opinion may be justified."

In addition to the foregoing section, there is another section, namely, section 3149, which relates to the powers of the commission, which must also be considered in connection with section 3144, supra. Section 3149 provides:

"The commission shall not be bound by the usual common-law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided; but may make the investigation in such manner as in its judgment is best caculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this title."

In view that the latter section was fully considered by this court in *Kavalinakis* v. *Ind. Comm.*, (Utah) 246 P. 698, to which case we refer the reader, we merely refer to that section here without further comment.

The only question, therefore, to be decided here is contained in the propositions of the parties above stated.

This court has heretofore been called on to consider, construe, and apply the provisions of section 3144, supra. See *Salt Lake City* v. *Ind. Comm.*, 61 Utah, 514, 215 P. 1047. That case was approved and followed in *Brklacic* v. *Ind. Comm.*, 63 Utah, 582, 227 P. 1036. In considering section 3144, supra, in the case first cited, this court, in speaking through Mr. Justice Thurman, said:

"It certainly was not intended by that section that the commission might resume jurisdiction of a case that had once been regularly determined without some change or new development in the injury complained of not known to the parties when the former award was made. It may often happen that some material change in the condition of applicant's injury may occur after an award has been made, in which justice to one or the other of the parties litigant might demand a further hearing of the cause. It might be that what was supposed to be a serious or permanent injury for which a large compensation was awarded would prove to be only slight or temporary, in which case the compensation should be substantially modified or abrogated altogether; or it might be that the injury would afterwards prove to be more serious than was supposed when the award was made, in which case the compensation should be increased. There might be other reasons for the exercise of jurisdiction under the

statute last quoted which do not at present occur to the mind of the writer, but no reason whatever appears in the instant case.

"The court is of opinion that the foregoing is a reasonable and logical interpretation of section 3144, and that any other interpretation would invite endless litigation in this class of cases."

It was accordingly held in that case that there was no "change or new development in the injury complained of" which would authorize the commission to reassume jurisdiction and to make additional or further compensation.

It is contended by plaintiffs in this proceeding that the decision in that case is controlling in the instant one. No doubt much could be said on either side of the foregoing proposition. We are clearly of the opinion, however, that the rule or test laid down in *Salt Lake City* v. *Ind. Comm.*, supra, is a practical, safe, and workable rule or test, and should be adhered to. The question therefore is, Do the undisputed facts in the instant case bring it within the rule or test aforesaid? It will be observed that, while the commission took much pains in determining the nature of applicant's injuries and the extent of his disability before denying his application for further compensation, yet it will also be observed, as aptly expressed by Dr. Allen in his report to the commission in referring to applicant's case wherein he says, "This is a difficult case in which to make a positive diagnosis." Where such is the case, no doubt some latitude must be given the commission as well as experts in determining or arriving at a definite and final result. In the instant case there is no claim that the applicant is a malingerer or is shamming, or that he has ever attempted to deceive or mislead the commission or any one else. Upon the other hand, there is abundant and uncontradicted evidence that, when the operation was performed by Dr. Allen on June 26, 1926, it was made to appear that the injury prevented the applicant from earning a livelihood, and that, if no operation had been performed, the injury would have grown progressively worse. A condition of applicant's in-

jury was, therefore, disclosed when the operation was performed by Dr. Allen, which was not, and in the nature of things could not have been, known by the commission, nor by any one else so far as the record discloses, when the commission made its finding that the applicant's disability did not extend beyond April 6, 1925, and at which time the compensation was terminated. While the writer is firmly of the opinion that the rule laid down in *Salt Lake City* v. *Ind. Comm.*, supra, should be adhered to, yet he is also convinced that section 3144, supra, should receive a liberal construction and application where, as in this case, the jurisdictional facts are all established. That section provides that the commission shall have continuing jurisdiction over each case, and that it may from time to time make such modification or change with respect to former findings or orders as in its opinion may be justified, while under section 3149, supra, the commission is given a wide discretion and a large latitude in ascertaining "the substantial rights of the parties." Considering these two sections in pari materia, as we must, it is clear that the manifest intention of the Legislature was to abrogate, or, at least, to curtail or modify, the rigorous rule of res adjudicata. If such was not the legislative purpose, continuing jurisdiction "over each case" and the wide latitude of investigation would not have been given. This continuing jurisdiction and latitude was no doubt given for the express purpose suggested by Mr. Justice Thurman in *Salt Lake City* v. *Ind. Comm.*, supra, to avoid the making of excessive or inadequate awards in doubtful and complicated cases, and, if such should occur, and the evidence warrants it, that the commission had adequate power to correct the same. The commission, as pointed out in the case last referred to, may, however, not correct mere errors of judgment and increase or reduce compensation once fixed, and, unless some change or new development in an injury is made evident, the original compensation as fixed must stand. If there is some change or new development, however, the commission may then modify or change its findings or orders so as to conform to the newly developed condition or change.

The only question, therefore, is, Do the undisputed facts bring the case within the rule laid down in *Salt Lake City* v. *Ind. Comm.*, supra? As to that different minds might arrive at different conclusions. But, even so, the case must nevertheless be decided, and it must be determined whether the case falls within or without the rule there laid down. As pointed out by Dr. Allen, the applicant's condition presented "a difficult case in which to make a positive diagnosis." If that be true, it was necessarily a much more difficult one in which to make a prognosis of the ultimate course the injury would follow, or what new conditions or changes might develop. The operation performed by Dr. Allen, therefore, disclosed the actual condition of applicant's knee, as such condition had developed after the order disallowing further compensation had been made by the commission as hereinbefore stated. In the opinion of the writer, the foregoing facts bring the case within the rule announced in *Salt Lake City* v. *Ind. Comm.*, namely, that a changed and new condition in the applicant's injury had developed, and hence the case is one coming within the purview of section 3144, supra, giving the commission continuing jurisdiction. The difficulty with the award as it now stands, however, is this: The commission awarded compensation commencing from the 7th day of April, 1925, the day following the day on which by the former order compensation had been terminated. When additional compensation is awarded under section 3144 for a change or new development in the injury, the compensation necessarily can date only from the discovery of the changed condition or new development in the injury. That is the purpose of the statute, and that is why a new or additional investigation is authorized to be made. While there is sufficient evidence in this case establishing a changed or newly developed condition in the applicant's injury, yet there is no finding by the commission just at what time the changed condition or new development occurred or took place. Such a finding, it seems to me, is necessary as a basis for the additional compensation. In this case the commission awarded Compensation, therefore, for a period

of time antedating the discovery of the changed condition in applicant's injury. In doing that, I think the commission exceeded its jurisdiction. Under the statute this court cannot correct the award so as to make it conform to the evidence, but all we can do is either to affirm or to annul it. In view, therefore, that the commission exceeded its authority in awarding compensation from April 7, 1925, and long before it was shown by the operation performed by Dr. Allen that there was a new development or changed condition of applicant's injury, the award as made cannot stand. The additional compensation under section 3144 can commence only from the date that the changed or newly developed condition is made manifest to the commission by evidence. That date is not found by the commission, and it is the commission and not this court that must determine that date. It is clear from the evidence, however, that April 7, 1925, is not the correct date.

For the reasons stated, it follows that the award as made should be, and it accordingly is, annulled.

GIDEON, C. J., and THURMAN and CHERRY, JJ., concur in the result.

STRAUP, J., concurs in the result, and on the further ground that all of the matters concerning the character and extent of the applicant's injury before the board and considered by it on the last hearing were before it and considered by it on the prior hearings; and the additional evidence heard by it on the last hearing was of the same character heard by it on the former hearings and concerning the same injury, an injury to the applicant's knee. The most that can be said of the matter is that subsequent to the prior hearings a physician was found who testified that applicant's injury was more serious than was testified to by other physicians of equal standing and ability on the prior hearings and on the last hearing.