UNITED AIRLINES TRANSPORT CORPORATION et al.
v. INDUSTRIAL COMMISSION et al.

No. 6906.   Decided December 18, 1946.   (175 P. 2d 752.)

See 71 C. J., Workmen's Compensation Acts, sec. 47; 20 Am. Jur. 188.

*Arthur E. Moeton* and *Elias L. Day, both* of Salt Lake City, for plaintiffs.

*Grover A. Giles,* Atty. Gen., *Zar E. Hayes,* and *Arthur H. Nielson,* Deputy Attys. Gen., for defendants.

McDONOUGH, Justice.

This is a review of an order of the Industrial Commission of Utah granting an award to the State Treasurer for the use and benefit of the Combined Injury Benefit Fund. It is the second time this case has been before this court. The facts are detailed in the original opinion, 107 Utah 52, 151 P. 2d 591, and will be repeated only briefly herein.

Neva Cantwell, stewardess employed by plaintiff United Airlines Transport Corporation, was killed in the course of her employment in an airplane crash near Salt Lake City May 1, 1942. She was employed in California, where she lived at the time of the accident. The principal office of the plaintiff employer was in California, and the regularly scheduled flight of deceased commenced in California and proceeded eastward. After the death of Miss Cantwell the insurance carrier, Hartford Accident and Indemnity Company, paid burial expenses in accordance with California law, and it was determined by the affidavit of decendent's mother that there were no surviving dependents.

The original decision by this court was founded upon a presumption as to the laws of the State of California. In particular, this court said [107 Utah 52, 151 P. 2d 596]:

"While not being allowed to take judicial notice of California's Workmen's Compensation Law, from the evidence before us with the presumption that the laws of a sister state are the same as those of the forum, and where there is no evidence to the contrary, we must hold that the provisions of 42-1-52a relative to exemption and reciprocity are the same as ours, and so plaintiffs were exempted, and the provision of our law providing for exclusive remedy bars the Commission from any action in this cause."

The order of the Commission was annulled and vacated. Subsequently the Commission opened the case for further hearing, and it was determined that the California law did not provide for the reciprocity which was presumed in the above quoted paragraph. Accordingly, the Commission granted the award which is the subject of the present review.

Several errors have been assigned by plaintiffs. Those pertaining to the question of the constitutionality of the applicable sections of the Utah code were disposed of by the previous decision. They will not not be considered here.

Plaintiffs contend that the previous decision is res adjudicata of this controversy. This issue must be decided adversely to plaintiffs. By section 42-1-72, U. C. A. 1943, the Commission's power over each case is a continuing one, permitting such modifications of findings and orders as in the opinion of the Commission may be justified. By section 42-1-79, U. C. A. 1943, the power of this court upon a review is limited to entering a judgment "Either affirming or setting aside the award." This court has interpreted these sections to mean that the Industrial Commission should not reopen a case merely for the purpose of hearing cumulative or corroborative evidence; but when new evidence is available, or new issues have arisen, then their power to reconsider the case is not curtailed. *Salt Lake City* v. *Industrial Commission*, 61 Utah 514, 215 P. 1047; *McGarry* v. *Industrial Commission*, 64 Utah 592, 232 P. 1090, 39 A. L. R. 306; *Aetna Life Insurance Co.* v. *Industrial Commission*, 69 Utah 102, 252 P. 567; *Hartford Accident & Indemnity Co.* v. *Miller*, 68 Utah 71, 249 P. 249;

*American Smelting & Refrigerator Co.* v. *Industrial Commission*, 79 Utah 302, 10 P. 2d 918. The evidence as to the California laws was not introduced at the first hearing before the Commission. At the second hearing that evidence was supplied by stipulation. This is not a case of merely submitting cumulative or corroborative evidence. It is one of supplying that which was omitted at the first hearing. In particular the principles of the McGarry case cited above are applicable. The former decision of this court wiped clean the slate before the Commission, subject of course to the rulings of this court on the law applicable. The ruling of this court as to the law applicable was that there was no competent evidence before the Commission as to the California law. That statement of the law is still good as to that first hearing, but it cannot be res adjudicata as to the situation in the second hearing where there was evidence as to the California law.

Plaintiffs argue that the decision of the Commission is against the law. In their brief they discuss to some extent the decisions of this court which pertain to the maintenance of the status of employer and employee in this state. This raises a question of primary importance in a case such as the present one.

The introductory paragraph and paragraph (1) of section 42-1-64, U. C. A. 1943, reads as follows:

"In case injury causes death within the period of three years, the employer or insurance carrier shall pay the burial expenses of the deceased as provided herein, and further benefits in the amounts and to the persons as follows:

"(1) If there are no dependents, the employer and insurance carrier shall pay into the state treasury a sum equal to 20 per cent of the amount provided in subdivision (2) of this section. *Any claim for compensation must be filed with the commission within one year from the date of the death of the deceased, and, if at the end of one year from the date of the death of the deceased no claim for compensation shall have been filed with the commission, the payment of a sum equal to 20 per cent of the amount provided in subdivision (2) of this section shall be paid at that time into the state treasury by the employer or the insurance carrier.* Such payment shall be held in a special fund for the purposes provided in sections 42-1-65 and 42-1-66; the state

treasurer shall be the custodian of such special fund, and the commission shall direct the distribution thereof."

The question confronting us is: Does chapter 1 of Title 42, U. C. A. 1943, evidence a legislative intent to require an employer whose employee is killed while temporarily engaged in his employment in Utah, though he is hired and regularly employed elsewhere, to pay into the special fund provided for by Sec. 42-1-65 and by Sec. 42-1-66, the amount provided by Sec. 42-1-64, in case he leaves no dependents? The question is so phrased on the assumption that an accident arising out of or in the course of employment in this state is sufficient basis for invoking the jurisdiction of the Commission, though the situs of the employer-employee relationship is in another state; that is, the Commission has, under such situation, general jurisdiction to make an award. However, if the employee or his dependents are entitled to compensation under the laws of the state of his regular employment, the Commission may not preclude that from being done.

While under the broad language of the provisions of Sections 42-1-40, 42-1-41 and 42-1-43, U. C. A. 1943, an injured employee or, in case of death, his dependents, may invoke the jurisdiction of the Utah Commission where a compensable accident happens here or a compensation status is here maintained, it by no means follows that the provision of Section 42-1-64 (1) is applicable to the insurance carrier of the employer in the instant proceedings.

It is reasonably clear that, despite the all-inclusive language used in the act in defining "employer," such word is used in several sections of Title 42 to encompass only an employer in a situation where, as phrased in *Fay* v. *Industrial Commission,* 100 Utah 542, 114 P. 2d 508, the employment status is localized in Utah.

Thus, Sec. 42-1-44 requires that employers shall secure compensation to their employees in one of three ways: (1) By insuring in the State Insurance Fund, (2) by insuring in some insurance company authorized to transact the

business of workmen's insurance in this state, or (3) by furnishing to the Commission satisfactory proof of financial ability to pay compensation direct. Section 42-1-54 provides that employers who shall fail to comply with the provisions of Sec. 42-1-44 shall be liable in a civil action to their employees for personal injuries arising out of or in the course of employment caused by the wrongful act, neglect or default of the employer. In such action neither the defense of the fellow-servant rule, nor the defense of assumption of risk, nor the defense of contributory negligence is available to the employer. Proof of the injury constitutes prima facie evidence of negligence on the part of the employer and the burden is cast upon him to show freedom from negligence resulting in such injury.

Assume that an employer secures the payment of compensation to his employees under the provisions of the workmen's compensation statutes of a state where the employment status is localized, though not in conformity with the provisions of Sec. 42-1-44, U. C. A. 1943, which insurance covered compensable injury wherever it occurs. Assume an injury to one of his employees while temporarily engaged in his employer's work in this state. In such situation might the employee avail himself of the provisions of Sec. 42-1-54? Without assuming to construe a statute not before the court for construction, it can be said that it is doubtful that it was the legislative intent that he be permitted to do so. Yet, to construe the statute so as to preclude the employee doing so, the word "employer" as therein used must be contracted as hereinabove indicated or the permissible ways of securing the payment of compensation must be given a broader meaning than the literal one.

Again Sec. 42-1-39 provides among other things that every employer must annually prepare and mail to the Commission a statement showing: The number of persons employed during the preceding year; the number employed in each kind of employment; the scale of wages in each kind of employment, and the aggregate amount of wages paid to all employees. Any employer who refuses to furnish such

information is liable to a penalty of not to exceed $500 for each offense. Under this section must a corporation which has one or more employees temporarily working for it in this state, furnish such information to the Commission though the employment of these employees is localized in another state, where the corporation has several thousand employees? If so, to what purpose? The questions suggest the answer: That the Legislature in using the word "employer" in this section of the statutes had in mind only those employers whose employees are regularly employed here, plus, perhaps, under Sec. 42-1-52, those hired here.

We revert to the section of the statute here involved, Section 42-1-64. The original compensation act of this state provided that in case of the compensable death of an employee, where there were no dependents, the employer or insurance carrier should pay to the State Insurance Fund $750. See Sec. 3140, C. L. U. 1917. The original act also contained a provision (Sec. 3126) which read as follows:

"If a workman who has been hired in this state receives personal injury by accident arising out of and in the course of such employment, he shall be entitled to compensation according to the law of this state as provided for in this title, even though such injury was received outside of this state. If a workman who has been hired outside of this state is injured while engaged in his employer's business, and is entitled to compensation for such injury under the law of the state where he was hired, he shall be entitled to enforce against his employer his rights in this state if his rights are such that they can reasonably be determined and dealt with by the commission and the court in this state."

Under the last quoted provision, it seems to be clearly implied that a workman who was "hired"—i. e. maintained the status of employer and employee *(Buckingham Transportation Co.* v. *Industrial Commission,* 93 Utah 342, 72 P. 2d 1077)—in another state, did not come under the provisions of the act.

In 1921 Sec. 3140 of C. L. U. 1917 was amended so as to read as Sec. 42-1-64 U. C. A. 1943 now reads except as to amounts to be paid to dependents. (Laws of Utah 1921,

chap. 67, p. 176). Section 3126, C. L. U. 1917, quoted hereinabove, remained unchanged until 1933. In the latter year, what was apparently a clarifying amendment was made, so as to cause the second sentence thereof to read:

"If a workman who has been hired outside of this state is injured while engaged in his employer's business and is entitled to compensation for such injury under the law of the state where he was hired he shall be entitled to enforce his rights against his employer in the courts of this state." (Sec. 42-1-52, R. S. U. 1933).

This section remained unchanged until 1941. We shall later consider the amendment then made as well as the effect of Sec. 42-1-52a enacted at the same time. The history of these two sections indicates that up until 1941 it was not the legislative intent that a workman whose employment was localized in another jurisdiction, who was injured while temporarily working in this state, was entitled to the benefits of our workmen's compensation law. The statutes merely gave him the right to enforce his rights under the law of the situs of the employer-employee relationship.

Such conclusion is borne out by the case of *Buckingham Transportation Co.* v. *Industrial Commission*, supra. There, an employee whose contract of hire was executed in Colorado was injured in Utah while working for his employer. He applied for and was granted benefits under our law. This court upheld the award on the ground that under the evidence the applicant and his employer maintained the status of employer and employee in this state—that the situs of the relationship was here. Had the mere happening of the accident in Utah been sufficient under the statutes to entitle him to benefits, discussion of the situs of the relationship would have been superfluous. Under the statutes as they read prior to 1941 an employee of the plaintiff under the facts of the instant case would not be entitled to the benefits of our law, nor would plaintiff be required to make payment of the sum involved in the award.

Did the changes effected in 1941, adverted to hereinabove, evidence a legislative intent to require contribution by the employer described in the question propounded ■ at the outset of this opinion?

The Legislature in 1941 amended Sec. 42-1-52, R. S. U. 1933 so as to read:

"If an employee who has been hired or is regularly employed in this state receives personal injury by accident arising out of and in the course of such employment outside of this state, he, or his dependents in case of his death, shall be entitled to compensation according to the law of this state. This provision shall apply only to those injuries received by the employee within six months after leaving this state, unless prior to the expiration of such six months period the employer has filed with the industrial commission of Utah notice that he has elected to extend such coverage a greater period of time." (Laws of Utah, 1941, chap. 37.)

At the same session there was added Sec. 42-1-52a, which is the same numbered section in U. C. A. 1943. It reads, omitting the last paragraph which is not material to this discussion:

"Any employee who has been hired outside of this state and his employer shall be exempted from the provisions of this act while such employee is temporarily within this state doing work for his employer if such employer has furnished workmen's compensation insurance coverage under the workmen's compensation or similar laws of a state other than Utah, so as to cover such employee's employment while in this state; *provided* the extra-territorial provisions of this act are recognized in such other state and provided employers and employees who are covered in this state are likewise exempted from the application of the workmen's compensation or similar laws of such other state. The benefits under the workmen's compensation act or similar laws of such other state shall be the exclusive remedy against such employer for any injury, whether resulting in death or not, received by such employee while working for such employer in this state."

The amendment and the new enactment became effective the same day. See Laws of Utah 1941, Chap. 37.

The amendment of sec. 42-1-52 dropped the provision relative to enforcing the law of another jurisdiction. But note that the portion of sec. 42-1-52, R. S. U. 1933 which

was omitted contained no reference to the rights of an employee's dependents to have recourse to the courts of this state. It but provided that

"If a workman who has been hired outside of this state is injured while engaged in his employer's business and is entitled to compensation for such injury under the law of the state where he was hired he shall be entitled to enforce his rights against his employer in the courts of this state."

The added section confers, by implication, a right on the part of the employee to invoke the jurisdiction of the Utah Commission in case he is injured while temporarily employed in Utah in case the state of the situs of the employer-employee relationship does not by its laws exempt Utah employers under the same circumstances. It certainly is not clear that it *confers* any rights under the Utah law upon his dependents if he be killed. Only negatively and certainly ambiguously is it done, if at all. But conceding that the effect of striking from Sec. 42-1-52 the second sentence, which enabled the employee temporarily employed in Utah to enforce in our courts his rights under the compensation laws of another state, plus the enactment of 42-1-52a exempting under the stated condition, the employer of such employee from the provisions of Title 42, had the effect of placing such employee and his dependents under the aegis of our law by virtue of the inclusive language used in "the act" in defining employer and employee; did such enactments likewise have the effect of making all provisions of our compensation statutes, including paragraph 1 of sec. 42-1-64, applicable as to the employer of such employee? As to sections 42-1-44, 42-1-54 and 42-1-39, hereinabove discussed it is at least doubtful that they did.

As to section 42-1-64(1), it has, as pointed out hereinabove, remained unchanged since 1921. Is its wording context and purpose such as to support the position that the enactments of 1941 made its terms applicable to the employer in the case before us?

We first consider its purpose. The amount of the award made herein by the commission, if paid, is to be held in a special fund accumulated from like payments made by employers in cases where a compensable injury results in death and the employee leaves no dependents. Such fund is used for two purposes: (1) Where an employee who has previously incurred permanent partial disability, incurs a subsequent permanent partial disability, the difference between the compensation which would have been payable for the disability incurred in the later accident and that resulting from the combined injuries, is payable out of the fund, the last employer being only liable for the latter injury; and (2) the Commission may, out of such fund, allow to wholly dependent persons at the termination of benefits otherwise provided for by the statutes relative to workmen's compensation, additional benefits.

The purposes for which the fund is to be used suggests that it was to be accumulated from payments by Utah employers whose employees would benefit from it and who would each be protected from the liability of paying benefits because of a disability suffered by an employee while in the service of another. The employer of an employee temporarily here employed would in all likelihood never receive any benefit whatever from the fund. Nor would his employee or the employee's dependents. This is so because the injured employee and his dependents would in all likelihood be protected by the compensation laws of the state of the situs of the relationship and would, in most, if not in all, instances apply in such state for its benefits. Significantly no case has reached this court since 1941 where an employee has made application for benefits to our Commission where the situs of the employer-employee relationship was concededly in another state but the injury occurred in Utah. Whether any applications have in fact been made, we are not advised.

Concededly, the purposes for which the fund is accumulated would, in and of itself not be sufficient to evidence an intent to exclude the class of employers here discussed from

liability for payment thereto, but when considered in the light of the wording of the section, it is significant. Section 42-1-64(1) as pointed out hereinabove, unquestionably did not, prior to 1941 require such employer to make payment into the fund. The portion thereof which is italicized in the quotation set out hereinabove, was written therein in the light of that fact; that is, since at the time of its enactment in 1921 only those employees whose employment status was here localized were then entitled to benefits under Title 42, Chap. 1, the limitation of claim portion of the provision was enacted with that fact in mind. If the employment status was localized in Utah, the dependents would in all likelihood make application in Utah. If, in such case, the industrial accident happened in Utah, application by dependents would invariably be made here. If the accident happened elsewhere, the likelihood of dependents applying elsewhere would be remote. In enacting the provision, the Legislature doubtless had in mind the employer of an employee whose employment status was here localized.

We are of the opinion that in light of the other factors discussed, the retention of that portion of the provision at the time of the enactments of 1941, and since, is persuasive of a legislative intent not to bring the class of employers in question within the purview of this portion of the statute. We are more readily persuaded that this construction accords with legislative intent since it avoids the possibility of multiple liability upon the employer: (1) Liability in the jurisdiction where the contract of hire was entered into; (2) liability in the jurisdiction where the accident occurred; and (3) liability in the jurisdiction where the employment status is localized, if in another state. The statute, so construed, does not require the payment by the plaintiff of the amount adjudged by the decision of the Commission.

The award is therefore set aside.

LARSON, C. J., and PRATT and WOLFE, JJ., concur.

WADE, J., concurs with the result.