2011 UT App 246

**PROSPER TEAM, INC., Petitioner,**

v.

**DEPARTMENT OF WORKFORCE SERVICES, Workforce Appeals Board, and Matt Davis, Respondents.**

No. 20100863–CA.

Court of Appeals of Utah.

July 29, 2011.

Daniel J. Anderson, Provo, for Petitioner.

Jaceson R. Maughan, Salt Lake City, for Respondent Department of Workforce Services, Workforce Appeals Board.

Before Judges McHUGH, ORME, and THORNE.

## MEMORANDUM DECISION

ORME, Judge:

¶ 1 Petitioner Prosper Team, Inc., seeks our review of the Department of Workforce Services Appeals Board's decision upholding an award of unemployment benefits to Matt Davis (Claimant), a former employee of Prosper.[1] Prosper contends that the Board erred in concluding that Prosper had not established that Claimant was terminated for just cause.

¶ 2 A claimant is ineligible for unemployment benefits if discharged for just cause. *See* Utah Admin. Code R994–405–201. Before just cause will be found, the employer must establish (1) culpability, (2) knowledge, and (3) control on the part of the employee. *See id.* R994–405–202, –203. *See also Gibson v. Department of Emp't Sec.*, 840 P.2d 780, 783 (Utah Ct.App.1992) ("The employer must establish each of the three elements . . . for the Board to deny benefits."), *cert. denied*, 853 P.2d 897 (Utah 1993). Whether Prosper established each element of the just cause test is a mixed question of law and fact. *See*

*Johnson v. Department of Emp't Sec.*, 782 P.2d 965, 968 (Utah Ct.App.1993). We will disturb the Board's findings of fact only if they are "not supported by substantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63G–4–403(4)(g) (2008). We will not disturb the Board's application of the law to the facts as long as it is "within the realm of reasonableness and rationality." *EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 9, 157 P.3d 334 (citation and internal quotation marks omitted). In the context of these deferential standards of review, we see no error in the Board's conclusion that Prosper did not establish the element of knowledge. We therefore need not address the culpability and control elements of the just cause inquiry. *See Salt Lake Donated Dental Servs., Inc. v. Department of Workforce Servs.*, 2011 UT App 7, ¶ 5, 246 P.3d 1206 (indicating that because the court saw no error in the Board's decision with respect to the control element, the court did not need to address the culpability and knowledge elements).

¶ 3 To establish the element of knowledge, an employer must prove that the employee knew of the conduct the employer expected and was able to anticipate the negative effect of failing to adhere to that conduct. *See* Utah Admin. Code R994–405–202(2). Prosper contends that substantial evidence does not support the Board's finding that Claimant did not have knowledge of the conduct expected of him and, therefore, that the Board's decision is "arbitrary and capricious." We disagree.

¶ 4 "Substantial evidence exists where more than a mere scintilla, though something less than the weight of the evidence, supports the [Board's] findings." *Carradine v. Labor Comm'n*, 2011 UT App 212, ¶ 7, 258 P.3d 636. *See also Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter-Day Saints*, 2007 UT 42, ¶ 35, 164 P.3d 384. Stated differently, an "administrative law decision meets the substantial evidence

---

1. We have determined that "[t]he facts and legal arguments are adequately presented in the briefs and record[,] and the decisional process would not be significantly aided by oral argument." Utah R.App. P. 29(a)(3).

test when a reasonable mind might accept as adequate the evidence supporting the decision." *Martinez*, 2007 UT 42, ¶ 35, 164 P.3d 384 (citation and internal quotation marks omitted). The Board based its decision on Claimant's testimony, which it deemed credible,[2] that "he simply did not understand" that he had been assigned a specific work schedule. Further, the record contains testimony from Claimant that he observed other Prosper employees come and go as they pleased, appearing not to work a precise schedule; that his pay was based primarily on commission and that he had flexibility to schedule meetings with customers when they were available to meet, even if that time was outside his recommended shift; that no action was taken against him for deviations from the attendance schedule even after he received his written warning; that he regularly worked in excess of forty hours per week; and that he never believed his job was in jeopardy because of attendance issues and was "shock[ed]" when he was ultimately terminated.

¶ 5 We conclude that a reasonable mind might consider this evidence adequate to support the Board's finding that Claimant did not have knowledge that he was expected to rigidly adhere to certain shift requirements. Additionally, the Board found that Claimant could not have anticipated the negative effects of failing to adhere to the schedule outlined by Prosper. This determination is adequately supported by evidence in the record. Claimant testified-and, again, that testimony was deemed credible by the Board-that the only expectations of which he was aware were the requirements to work at least forty hours per week and maximize customer contacts. Because Claimant believed he was complying with Prosper's core expectations, he could not have anticipated that failure to also comply with what Claimant considered a recommended work schedule would have had negative effects.

¶ 6 Prosper argues that this evidence is not sufficient to support the Board's finding with respect to the knowledge element of the just cause inquiry. Specifically, Prosper contends that, even if Claimant was confused as to whether he was required to work a specific schedule, the written warning and other verbal and email warnings made it explicitly clear that he was expected to adhere to a specific schedule, and if unable to do so, he was to notify his supervisor. The written warning, Prosper contends, was "a clear explanation" of the expected conduct required of Claimant. We acknowledge that the Utah Administrative Code states that "[a] specific warning is one way to show the claimant had knowledge of the expected conduct." Utah Admin. Code. R994–405–202(2). Nevertheless, this rule presupposes comprehension of the "specific warning" by Claimant. However, the Board found in this case that Claimant did not comprehend that the schedule outlined in the written warning was anything more than a mere recommendation.[3] Prosper also suggests that the Board erred in finding that Claimant lacked knowledge of the conduct expected of him because, on balance, the warnings Claimant received are

---

2. Prosper argues that it was improper for the Board to base its decision on Claimant's testimony because, it contends, Claimant "lacked credibility to testify about his separation." Prosper alleges that Claimant lacked credibility because when he applied for unemployment benefits, he inaccurately answered "no" to a series of questions about his employment at Prosper, including whether he had violated company policies, been fired for attendance issues, or received any warnings to improve his performance. Even if these allegations are true, we never enter into the realm of credibility; the Board is simply in a much better position to judge the credibility of a witness than this court. *See, e.g., Questar Pipeline Co. v. Utah State Tax Comm'n*, 850 P.2d 1175, 1178 (Utah 1993). Accordingly, we will not disturb the Board's determination that Claimant gave credible testimony.

3. Prosper also mentions that Claimant must have known he had a fixed, mandatory work schedule because "the Board found [he] knew he needed to get permission from his supervisor to deviate from his schedule." Contrary to Prosper's statement, the Board did not find that Claimant knew he needed to get "permission" before deviating from his schedule. Rather, the Board adopted the ALJ's finding that Claimant understood that he was to "call" and "notify" his supervisor if he was going to be late or absent. Thus, the Board found that Claimant merely had to inform his supervisor, rather than seek permission, if he was going to deviate from what Claimant believed to be a recommended schedule. Therefore, we reject Prosper's argument that Claimant implicitly conceded that he had a fixed schedule.

much more reliable evidence of Claimant's knowledge than Claimant's testimony before the administrative law judge. While this may be so, "[i]t is not our prerogative to weigh the evidence anew." *Patterson v. Utah Cnty. Bd. of Adjustment,* 893 P.2d 602, 604 (Utah Ct.App.1995).

¶ 7 This is obviously a close case. It divided the Board by a vote of 2–1. We acknowledge that we may well have found for Prosper had we been members of the Board. But even if we may have reached a different conclusion than the Board did, we will not substitute our judgment where the Board's findings are supported by substantial evidence. *See Hurley v. Board of Review,* 767 P.2d 524, 526–27 (Utah 1988) (noting that an "agency's findings of fact … are accorded substantial deference and will not be overturned if based on substantial evidence, even if another conclusion from the evidence is permissible").

¶ 8 Prosper further argues that the Board erred in finding that Claimant did not anticipate the negative effect of his failure to comply with the work schedule given him. Specifically, Prosper argues that the Board erred because Claimant should have foreseen that his failure to comply with the schedule could cause him to miss appointments, create distrust and reflect poorly on Prosper and its partners, and ultimately result in his termination. Moreover, Prosper argues that the Board's finding is erroneous because it is a "violation of a universal standard of conduct" for an employee not to follow its employer's work policy. *See* Utah Admin. Code R994–405–202(2) (providing that the knowledge element is established where there is a "violation of a universal standard of conduct"). While it is reasonable to assume that failure to adhere to a work schedule could potentially result in the negative effects Prosper identifies, and while it is true that an employer has a reasonable expectation that its employees will adhere to company attendance policies, *see id.* R994–405–208(2)(a) (stating that

"[a]ttendance standards are usually necessary to maintain order, control, and productivity"), Prosper's argument assumes that Claimant understood that he was required to adhere to the schedule provided to him by his supervisor. Nevertheless, as mentioned above, Claimant offered testimony, found credible by the Board, that he did not believe the schedule provided him was, ultimately, more than a recommendation. Further, we note in particular that while missing an appointment with a customer is certainly a serious issue, Claimant received a written warning when he did so. The Utah Administrative Code provides that "[a]fter a warning the claimant should [be] given an opportunity to correct the objectionable conduct." *Id.* R994–405–202(2). There is no evidence that Claimant missed another appointment after he received the written warning from his supervisor.[4] Thus, although Claimant was not working the hours Prosper may have expected following the warning, he appears to have corrected the specific behavior that triggered the written warning because he did not miss any additional appointments.

¶ 9 Finally, Claimant testified that the only expectations of which he was aware were the requirements that he work more than forty hours a week and maximize customer contacts. As the Board credited this testimony, it could reasonably find that Claimant was complying with the only expectations of which he was aware and that he did not anticipate any negative effect from his failure to follow what he believed to be Prosper's recommended schedule. Accordingly, we see no "fatal flaw" in these findings. *See Prosper Team, Inc. v. Department of Workforce Servs.,* 2011 UT App 142, ¶ 10, 256 P.3d 246 (noting that " 'if there is evidence supporting a finding, absent a legal problem—a "fatal flaw"—with that evidence, the finding will stand, even though there is ample record evidence that would have supported contrary findings' ") (quoting *Kimball v. Kimball,* 2009 UT App 233, ¶ 20 n. 5, 217 P.3d 733)

---

4. Prosper argues that a lack of evidence regarding whether Claimant missed any appointments after he received the written warning is not sufficient to establish that Claimant did not, in fact, miss any other appointments with customers. We remind Prosper that it bore the burden of

establishing the elements of the just cause inquiry. *See Gibson v. Department of Emp't Sec.,* 840 P.2d 780, 783 (Utah Ct.App.1992). Thus, absent any proof produced by Prosper that Claimant did miss additional appointments, we assume such evidence does not exist.

(quoting *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1315 (Utah Ct.App.1991)).

¶ 10 In sum, we acknowledge that the evidence would have supported a finding that Claimant was aware, particularly after he received a written warning, that he was required to adhere to a mandatory work schedule. Ultimately, however, a majority of the Board found credible Claimant's testimony that, despite the written warning he received, he did not understand that he must adhere to that schedule. We must defer to the Board's advantaged position to assess Claimant's credibility. His testimony provides more than a mere scintilla of evidence to support the Board's finding that Claimant did not have adequate knowledge of what was expected of him and therefore could not anticipate the negative consequences of failing to adhere to what he believed to be a recommended schedule. Moreover, Prosper has not identified a "fatal flaw" in these findings. Thus, we conclude that it was "within the realm of reasonableness and rationality," *EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 9, 157 P.3d 334, for the Board to conclude that Prosper failed to establish the knowledge element of the just cause inquiry. An employer is required to establish each of the three just cause elements. *See Gibson v. Department of Emp't Sec.*, 840 P.2d 780, 783 (Utah Ct.App.1992). We therefore decline to disturb the Board's decision.

¶ 11 WE CONCUR: CAROLYN B. McHUGH, Associate Presiding Judge, and WILLIAM A. THORNE JR., Judge.